# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Phredra Hill<br><br>     Plaintiff,<br><br>v.<br><br>Capital Accounts, LLC,<br><br>     Defendant. | Case No.<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PROTECTION ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

## PARTIES

1. Plaintiff, Phredra Hill ("Ms. Hill" or "Plaintiff"), is a natural person who resided in Atlanta, Georgia, at all times relevant to this action.

2. Defendant, Capital Accounts, LLC ("Capital"), is a Tennessee limited liability company that maintained its principal place of business in Franklin, Tennessee, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

5. Before Capital began contacting Ms. Hill, it and Ms. Hill had no prior business relationship and Ms. Hill had never provided express consent to Capital to be contacted on her cellular telephone.

6. Capital regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

7. The principal source of Capital's revenue is debt collection.

8. Capital is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. As described, *infra*, Capital contacted Ms. Hill to collect a debt that was incurred primarily for personal, family, or household purposes.

10. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

11. Ms. Hill is a "consumer" as defined by 15 U.S.C. § 1692a(3).

12. Within the past twelve months, Capital began calling Ms. Hill on her cellular phone in connection with the collection of a medical debt.

13. Shortly after the calls began and on multiple occasions thereafter, Ms. Hill explained to Capital that she was unemployed, had no money to pay the debt, and communicated her desire that Capital cease calling her.

14. In addition, Ms. Hill disputed that she owed the debt because her insurance should have paid the bill.

15. Despite these communications, Capital continued to call Ms. Hill on her cellular phone.

16. On multiple occasions Capital provided Ms. Hill with the account balance, but the amount often varied from one call to another.

17. Ms. Hill never received anything in writing from Capital, and never received correspondence from Capital advising Ms. Hill that the account had been transferred or assigned to Capital for collection, the identification of the original creditor, the amount of the original balance, and advising Ms. Hill of her rights to dispute the account and request validation.

18. During at least one communication, Ms. Hill reiterated her desire that Capital cease calling her.

19. During this communication, after being notified of Ms. Hill's desire, Capital then notified Ms. Hill that the conversation was being recorded and proceeded

to ask Ms. Hill very personal questions, such as why she didn't work and how she paid her bills.

20. In addition, the Capital representative made a rude remark about how he wished he could live without paying his bills like Ms. Hill, and then pressed Ms. Hill to make a payment.

21. Despite being notified multiple times of Ms. Hill's desire that Capital cease calling her and Ms. Hill's inability to pay anything, Capital continued to call Ms. Hill on her cellular phone in an attempt to collect the debt.

22. Capital's collection efforts, including but not limited to its persistent telephone calls, caused Ms. Hill emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

23. Capital's collection efforts also intruded upon Ms. Hill's privacy.

24. In addition, each time Capital placed a telephone call to Ms. Hill, Capital occupied Ms. Hill's telephone number such that Ms. Hill was unable to receive other phone calls at that telephone number while Capital was calling her.

25. Capital's telephone calls also forced Ms. Hill to lose time by having to tend to Capital's unwanted calls.

-5-

## COUNT ONE

## Violations of the Fair Debt Collection Practices Act

26. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 25 above as if fully set forth herein.

27. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

28. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

29. Defendant violated 15 U.S.C. § 1692e(2) by providing Ms. Hill with conflicting, false, and misleading information regarding the character, amount, or legal status of the debt.

30. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

31. Defendant violated 15 U.S.C. § 1692g by failing to send Ms. Hill written notice containing her validation rights concerning the debt within five (5) days of Capital's initial communication with Ms. Hill.

## COUNT TWO

### Violation of the Telephone Consumer Protection Act

32. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 25 above as if fully set forth herein.

33. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

34. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

35. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd. 7961,

7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

36. A predictive dialer is an ATDS within the meaning of the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

37. The TCPA provides, in part:

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
> > (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
> >
> > > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called

>
> party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> * * *
>
> > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

38. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd. 7691, 7999-8000, ¶ 72-73 (2015).

39. Plaintiff was the "called party" in each telephone call Defendant placed to Plaintiff's cellular telephone.

40. The "called party" may revoke and prior consent to be called on their cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd. 7961, 7993, ¶ 55 (2015).

41. Defendant violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded

voice to call Plaintiff on her cellular telephone without Plaintiff's prior express consent or after such consent had been revoked.

42. In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

43. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

44. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

45. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 U.S. Dist. LEXIS, at *21-22; see also *Roylance*, 2015 U.S. Dist. LEXIS, at *31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

46. Defendant voluntarily placed telephone calls to Plaintiff's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

47. Defendant's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## JURY DEMAND

48. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

49. Plaintiff prays for the following relief:

   a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

   b. An order enjoining Defendant from placing further telephone calls to Plaintiff's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

c. Judgment against Defendant for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Defendant made in violation of the TCPA.

d. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Hyslip & Taylor, LLC LPA

Date: October 24, 2016        By: /s/ Charles M. Clapp

*Of Counsel*
Charles M. Clapp, Esq.
Georgia Bar No. 101089
5 Concourse Parkway NE
Suite 3000
Atlanta, GA  30328
Telephone:  (404) 585-0040
Facsimile:  (404) 393-8893
Email: charles@lawcmc.com
*Counsel for Plaintiff*